Thomas Lether, OSB #101708
Eric Neal, OSB #110268
LETHER LAW GROUP
1848 Westlake Ave N., Suite 100
Seattle, WA 98109
T: 206-467-5444/F: 206-467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for Plaintiff Crum & Forster*
*Specialty Insurance Company*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, a foreign insurer,<br><br>        Plaintiff,<br><br>    v.<br><br>BCI CONTRACTING, INC., an Oregon corporation; COLTON WELLETTE, an individual; LYNN EVERS, as personal representative for the ESTATE OF KURT HELLMICH; SIERRA EVERS-HELLMICH, an individual; and LYNN EVERS, an individual,<br><br>        Defendants. | No. 3:26-cv-423<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff, Crum & Forster Specialty Insurance Company (CFSIC) submits the following

Complaint for Declaratory Relief pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

## I.    PARTIES

1.1    Plaintiff CFSIC is a Delaware corporation with a statutory home office in Delaware and a main administrative office in Morristown, New Jersey. CFSIC is eligible to transact business in Oregon and at all material times has transacted business in Oregon.

1.2    Defendant BCI Contracting, Inc. (BCI) is an Oregon corporation with its principal place of business in Washington County, Oregon.

1.3    Defendant Colton Wellette is an individual who on information and belief was an employee of BCI, and at all materials times, a resident of Oregon.

1.4    Defendant Lynn Evers is the duly appointed personal representative of the Estate of Kurt Hellmich (hereinafter referred to as "the Estate").

1.5    Defendant Sierra Evers-Hellmich is an individual who on information and belief was and is a resident of Lane County, Oregon.

1.6    Defendant Lynn Evers is an individual who on information and belief was and is a resident of California.

## II.    JURISDICTION AND VENUE

2.1    Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332, *et. seq*., as complete diversity exists amongst the Parties and the amount in controversy exceeds $75,000.

2.2    The Court has jurisdiction over this Declaratory Judgment action pursuant to 28 U.S.C. § 2201 because there is an actual and justiciable controversy between the Parties with respect to the existence of insurance coverage under the Policies of insurance issued by CFSIC. A judicial determination and declaration of the rights and obligations of the Parties is necessary and appropriate at this time because CFSIC has no adequate remedy at law which will resolve

the current controversy.

2.3     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as this action involves a dispute over the application of insurance coverage under an insurance policy issued in Oregon, and the events and omissions which gave rise to this claim occurred in this district.

### III.    FACTUAL BACKGROUND

3.1     On October 14, 2024, Colton Wellette was traveling eastbound on State Route 126.

3.2     Mr. Wellette was driving a Dodge Ram 3500 that was pulling a gooseneck trailer owned by BCI. On information and belief, the trailer contained bales of hydroseed.

3.3     CFSIC is in receipt of a draft complaint, prepared by Attorney Chad Stavley, counsel for Lynn Evers as personal representative of the Estate of Kurt Hellmich, Sierra Evers-Hellmich, and Lynn Evers. The draft complaint names BCI and Colton Wellette as defendants. It is CFSIC's understanding that the alleged facts contained in the draft complaint are based on Sierra Evers-Hellmich's and Lynn Evers' personal recollections of the incident.

3.4     In the draft complaint, it is alleged that on October 14, 2024, Mr. Wellette was driving his truck pulling a 2005 flatbed gooseneck trailer with a load of hydroseed pallets.

3.5     It is further alleged that Mr. Wellette was driving eastbound when he lost control of the vehicle and crossed the center line striking a vehicle being driven by Ms. Evers-Hellmich.

3.6     It is alleged that the impact destroyed the vehicles and released a cloud of hydroseed. It is further alleged that Kurt Allen Hellmich died at the scene and that Ms. Evers-Hellmich and Lynn Evers suffered injuries.

3.7     In the draft complaint, it is alleged that that BCI and Mr. Wellette were negligent in the following ways:

- Failing to maintain a proper lookout;
- Failing to maintain control of the vehicle;
- Failing to exercise due care;
- Driving at a speed too fast given the load being pulled;
- Driving without a commercial driver's license;
- Driving without the proper training necessary to pull a load such as the one being pulled;
- Failing to properly train Mr. Wellette so that he could pull a heavy load;
- Failing to have the proper equipment necessary to prevent the load from shifting and causing the trailer to go into oncoming traffic;
- In crossing the center line into oncoming traffic while navigating a curve.

3.8    In the draft complaint, it is alleged that BCI's and Mr. Wellette's negligence resulted in the auto accident.

3.9    CFSIC is also in receipt of a police report. According to the police report, as Mr. Wellette began negotiating the curve of the road while heading eastbound, Mr. Wellette lost control of his vehicle. The trailer began losing portions of its load and ultimately overturned into the westbound lane of the road. The contents of the trailer spilled into the eastbound lane. The police report states that a westbound Toyota Corolla being driven by Sierra Marie Evers-Hellmich collided with the debris from the overturned trailers.

### IV.    THE PRIMARY POLICY OF INSURANCE

**A.    <u>Identification of the Primary Insurance Policy</u>**

4.1    CFSIC issued an Environmental Policy under policy number EPK-146352, which has effective dates of December 31, 2023 to December 31, 2024 (hereinafter referred to as the "Primary Policy"). The Primary Policy includes a Commercial General Liability Coverage Part, a Contractors Pollution Liability Coverage Part, and an Errors and Omissions Coverage Part.

4.2    The Primary Policy contains a Commercial General Liability Each Occurrence Limit of $2,000,000 and General Aggregate Limit of $4,000,000. The Primary Policy also contains a Contractor's Pollution Liability Each Pollution Condition Limit of $4,000,000.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**B.**    **<u>Provisions of the Primary Policy</u>**

4.3    The Primary Policy includes the following Commercial General Liability Insuring

Agreement:

### COMMERCIAL GENERAL LIABILITY
### OCCURRENCE COVERAGE PART

### PROVISIONS

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

All exclusions, conditions or definitions contained within this Coverage Part are provided in addition to any applicable exclusions, conditions and definitions provided within the Common Provisions which are incorporated in this Coverage Part and to which this Coverage Part is attached.

## SECTION I - INSURING AGREEMENTS

**1.**    **Insuring Agreement A - Bodily Injury And Property Damage**

**a.**    We will pay, in excess of the Deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" for "bodily injury" or "property damage" to which this insurance applies. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result. But the amount we will pay for "damages" is limited as described in Section **IV** - Limits Of Insurance And Deductible within the Common Provisions.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section **I** - Defense or Section **II** - Defense Expenses within the Common Provisions.

**b.**    This insurance applies to "bodily injury" and "property damage" only if all of the following conditions are met:

**(1)**   Before the "policy period", no insured had knowledge of any "occurrence" that could reasonably give rise to a "claim" under this Policy;

**(2)**   Neither the "claim" for that "bodily injury" or "property damage", nor the "occurrence" resulting in that "bodily injury" or "property damage" were reported under any policy in effect before the "policy period" or disclosed in the application for this Policy;

**(3)**   No fact, incident or circumstance involving an "occurrence" or offense that reasonably would have resulted in a "claim" for that "bodily injury" or "property damage" was reported under any policy in effect before the "policy period" or disclosed in the application for this Policy;

**(4)**   That "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(5)**   That "bodily injury" or "property damage" first occurs during the "policy period"; and

**(6)**   A "claim" for "damages" for that "bodily injury" or "property damage" is made against any insured and reported to us in accordance with the provisions set forth in Section **VI** Common Conditions, **5.** Duties In The Event Of A Claim Or Suit within the Common Provisions.

EN0021-0211.

4.4   The Primary Policy also includes the following Common Provision:

## COMMON PROVISIONS

This Policy consists of: (1) these Common Provisions; (2) one or more Coverage Parts that have been purchased by one or more Named Insured(s); and (3) the Declarations Page(s) associated with such Coverage Part(s). Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine

COMPLAINT FOR DECLARATORY RELIEF – 6

rights, duties and what is and is not covered by this Policy.

There are separate Coverage Parts that you may purchase separately. They are subject to these Common Provisions. Some of the Coverage Parts provide occurrence based coverage and others provide claims made coverage. Some Coverage Parts have defense expenses within limits, some do not. Some Coverage Parts do not provide for any defense obligation. Each Coverage Part has a section setting forth its own exclusions and conditions. The Common Provisions also contain definitions, exclusions and conditions that apply to all Coverage Parts. The Common Provisions also provide for defense obligations, where applicable, limits of liability, who is insured and, with respect to claims made coverage parts, extended reporting period provisions. With respect to definitions, any word or phrase in quotes is a defined term that will appear in the definitions section of the Common Provisions. Certain words (such as, but not limited to, Policy, Declarations, Deductible and Self Insured Retention) are used with initial capitalization. Such words are not defined terms and do not appear in the definitions section of the Common Provisions.

Throughout this Policy the words "you" and "your" refer to the First Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance. The word "insured" means any person or organization qualifying as such under Section Ill Who Is An Insured.

In consideration of payment of the premium, in reliance upon the statements in the application for this insurance and all attachments and materials submitted therewith, and subject to all the provisions of this Policy, you agree with us as follows:

## SECTION I – DEFENSE

1.  **Commercial General Liability**

    If either of the following Coverage Parts: Commercial General Liability Occurrence or Commercial General Liability Claims Made, is purchased and is attached to these Common Provisions, then the following provisions apply to Insuring Agreement **A** – Bodily Injury And Property Damage and Insuring Agreement **B** - Personal And Advertising Injury:

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**a.** We have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies. We will pay "defense expenses" with respect to any "suit" against an insured that we defend. However, we have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

**b.** Our right and duty to defend end when we have used up the applicable limit of liability in the payment of judgments or settlements and "defense expenses" included within your Deductible mount under Insuring Agreements **A** and **B** or medical expenses under Insuring Agreement **C.** "defense expenses" incurred by us under the Commercial General Liability Occurrence Coverage Part or the Commercial General Liability Claims Made Coverage Part will not reduce the Limits of Insurance, except for "defense expenses" which are included within your Deductible Amount.

EN0020-0515.

4.5 The Primary Policy also includes the following Common Provision exclusion:

**SECTION V – COMMON EXCLUSIONS**

The following exclusions apply to all Coverage Parts attached to the Policy except where specifically noted:

The Policy does not apply to "damages", "defense expenses", "cleanup costs", or any loss, cost or expense, or any "claim" or "suit":

**1. Aircraft, Auto Rolling Stock Or Watercraft**

Based upon or arising out of the ownership, maintenance, use or entrustment to other of any aircraft, "auto", rolling stock, rail car, locomotive or watercraft owned or operated by or rented or loaned to, or in the control of, any insured. Use includes operation and "loading or unloading".

This exclusion applies even if:

a.    The "claim" against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of another by that insured, or if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto", rolling stock, rail car, locomotive or watercraft that is owned or operated by or rented or loaned to nay insured; or

[. . .]

c.    The "occurrence" or "pollution condition" is included in the "products-completed operations hazard".

EN0020-0515.

4.6    The Primary Policy includes the following relevant definitions:

**SECTION VII-COMMON DEFINITIONS**

[…]

3.    "Auto" means:

a.    A land motor vehicle, trailer or semitrailer designed for travel on public roads, including attached machinery or equipment; and

[. . . .]

4.    "Bodily injury" means physical injury, sickness or disease sustained by a person, including mental anguish and death resulting from any of these at any time.

[…]

6.    "Claim":

a.    With respect to the Commercial General Liability Occurrence Coverage Part, the Commercial General Liability Claims Made Coverage Part and the Errors and Omissions Liability Coverage Part, means a demand for "damages".

b.    With respect to the Contractors Pollution Liability Occurrence and Claims Made Coverage Parts and the Third Party Pollution Liability Coverage Part,

COMPLAINT FOR DECLARATORY RELIEF – 9

means a request or a demand for "damages" or "cleanup costs". "Claim" also includes any directive, order, or requirement of, court order issued by, or "suit" brought by the Government of the United States, Canada, or any local, State or Provincial Government entity of the United States of America or Canada duly acting under the authority of any law related to the protection of the environment.

[…]

9.    "Damages" means the monetary amount of any judgment, award or settlement that an insured becomes legally obligated to pay as a result of a "claim" or "suit". "Damages" does not include "cleanup costs", equitable or nonpecuniary relief, disgorgement of profits,  sanctions, fines or penalties.

[…]

26.    "Occurrence" means accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[…]

28.    "Policy period" means the period shown in the Declarations, unless cancelled, in which event, the "policy period" ends on the date that such cancellation is effective.

EN0020-0515.

4.7    The Primary Policy includes the following Contractors Pollution Liability

Insuring Agreement:

## CONTRACTORS POLLUTION LIABILITY
## OCCURRENCE COVERAGE PART

### PROVISIONS

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
All exclusions, conditions or definitions contained within this Coverage Part are provided in addition to any applicable exclusions, conditions and definitions provided within the

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Common Provisions which are incorporated in this Coverage Part and to which this Coverage Part is attached.

**SECTION I - INSURING AGREEMENT**

1.    **Contractors Pollution Liability**

   a.    We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay:

      **(1)**    As "damages" for "bodily injury" or "property damage"; and

      **(2)**    For "cleanup costs";

              resulting from a "pollution condition" that was caused by an "occurrence" and to which this insurance applies. We may, at our discretion, investigate any "occurrence" or "pollution condition" and settle any "claim" or "suit" that may result. But the amount we will pay is limited as described in Section **IV** – Limits Of Insurance And Deductible within the Common Provisions.

   b.    This insurance applies to "bodily injury", "property damage" and "cleanup costs" only if all of the following conditions are met:

      **(1)**    Before the "policy period", no insured had knowledge of any "occurrence" or "pollution condition" that could reasonably give rise to a "claim" under this Policy;

      **(2)**    Neither the "claim" against you for that "bodily injury", "property damage" or "pollution condition", nor the "occurrence" resulting in that "bodily injury", "property damage" or that "pollution condition" were reported under any policy in effect before the "policy period" or disclosed in the application for this Policy;

      **(3)**    No fact, incident or circumstance involving an "occurrence" or "pollution condition" that reasonably would have resulted in a "claim" against you for that "bodily injury" or "property damage" or those "cleanup

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

costs" was reported under any policy in effect before the "policy period" or disclosed in the application for this Policy;

**(4)** The "bodily injury", "property damage" or "cleanup costs" resulted from a "pollution condition" caused by an "occurrence" that took place within the "coverage territory";

**(5)** The "occurrence" arises out of "your work" performed during the "policy period", or "your product" delivered during the "policy period", except for "bodily injury" or "property damage" arising out of the "products-completed operations hazard" of "your product" or "your work";

**(6)** The "bodily injury", "property damage", or "pollution condition" resulting in "cleanup costs", first occurs during the "policy period"; and

**(7)** A "claim" for "damages" for that "bodily injury" or "property damage", or for "cleanup costs" for that "pollution condition" is made against any insured and reported to us in accordance with the provisions set forth in Section VI Common Conditions, **5.** Duties In The Event Of A Claim Or Suit within the Common Provisions.

EN0023-0211.

4.8    The Primary Policy also includes the following Common Provisions:

**SECTION I – DEFENSE**

[…]

**2.    Contractors Pollution Liability, Errors And Omissions Liability And Third Party Pollution Liability**

If one or more of the following Coverage Parts: Contractors Pollution Liability Occurrence Coverage, Contractors Pollution Liability Claims Made Coverage, Errors And Omissions Liability Coverage or Third Party Pollution Liability Coverage are purchased and the corresponding Coverage Part is attached to these Common

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Provisions, then the following provisions will apply to the Insuring Agreement under the Coverage Part.:

a.    We have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies. We will pay "defense expenses" with respect to any "suit" against an insured that we defend. However, we have no duty to defend the insured against any "suit" seeking: (1) "damages" for "bodily injury" or "property damage" to which this insurance does not apply; or (2) "cleanup costs" to which this insurance does not apply.

b.    Our right and duty to defend end when we have used up the applicable Limits of Insurance in the payment of any combination of judgments, settlements or "defense expenses".

c.    "Defense expenses" applicable to the Contractors Pollution Liability Occurrence or Claims Made Coverage Parts, the Errors and Omissions Liability Coverage Part and the Third Party Pollution Liability Coverage Part are included within the Limits of Insurance and will reduce the Limits of Insurance provided by each such Coverage Part.

**3.    Claims Arising Out Of The Same or Related Acts or Events**

The following provision applies only to the Commercial General Liability Claims Made Coverage Part, the Contractors Pollution Liability Claims Made Coverage Part, the Errors and the Omissions Liability Coverage Part and the Third Party Pollution Liability Coverage Part:

Two or more "claims" arising out of the same or related acts, errors, omissions, circumstances, transactions or events shall be deemed to be first made and reported on the earliest date on which any such "claim" was first made and reported. Such "claims" shall be deemed to be a single "claim".

EN0020-0515.

4.9    The Primary Policy includes the following definitions relevant to the foregoing

Provisions:

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**SECTION VII – COMMON DEFINITIONS**

[…]

7.     "Cleanup costs" means expenses incurred in the investigation, evaluation, monitoring, testing, removal, containment, treatment, response, disposal, remediation, detoxification or neutralization of any "pollutants".

The cleanup is deemed to be complete, and we will have no further obligation to pay for "cleanup costs" upon final approval from the supervising governmental authority or upon satisfaction of the requirements identified within the <u>American Society of Testing and Materials Guide For Risk Based Corrective Action</u>, which ever first occurs.

"Cleanup costs" does not include a "capital expenditure".

[…]

29.     "Pollutants" mean any solid, liquid, gaseous, thermal or biological irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste and any matter that by its presence, corrupts, defiles, contaminates or is harmful to the soil, air, or water, living things or the environment. Waste includes materials to be recycled, reconditioned or reclaimed.

It is understood that any substance or matter that is a "pollutant" does not lose its status as a "pollutant" because: (1) such substance or matter has, or may have, a useful function or purpose; or (2) the release, threatened release or presence of such substance or matter in any locale is not regulated, prohibited, remedied by, or the subject of, one or more "applicable laws".

30.     "Pollution condition" means the discharge, dispersal, seepage, migration, release, escape, presence or movement of "pollutants".

Two or more "pollution conditions" arising out of the same or related acts of discharge, dispersal, seepage, migration, release, escape or movement of "pollutants" shall be deemed to be a single "pollution condition".

EN0020-0515.

COMPLAINT FOR DECLARATORY RELIEF – 14

4.10   The Primary Policy includes the following Transportation Pollution Liability endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**TRANSPORTATION POLLUTION LIABILITY BLANKET ENDORSEMENT**

This endorsement modifies insurance provided under the following:

CONTRACTORS POLLUTION LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| Transportation Pollution – Each Pollution Condition Limit: | $4,000,000 |
| Transportation Pollution Aggregate Limit: | $4,000,000 |
| Transportation Pollution Deductible Amount: | $5,000 |

(If no entry appears above, the Limits of Insurance Shown in the Declaration will apply.)

A.  As respects the coverage afforded under this endorsement, the maximum amounts for which we are liability for "claims" related to transportation pollution is indicated in the Schedule shown above.

The Transportation Pollution – Each Pollution Condition Limit and the Transportation Pollution Aggregate Limit stated in the Schedule above are subject to and not in addition to the Contractors Pollution Liability Each Pollution condition Limit and General Aggregate Limit stated in the Declarations.

Payments under the Transportation Pollution – Each Pollution Condition Limit and the Transportation Pollution Aggregate Limit indicated in the schedule shown above are part of and erode the Contractors Pollution Liability Each Pollution Condition limit and General Aggregate Limit stated in the Declarations.

If no limit is indicated in the Schedule shown above, then the limits of the liability stated in the Declaration applicable to this Coverage Part will apply.

COMPLAINT FOR DECLARATORY RELIEF – 15

B.  Solely as respects the coverage afforded by this Endorsement, the Transportation Pollution Deductible Amount indicated in the Schedule shown above applies once to each "pollution condition" and can be applied either for "defense expenses", where applicable settlement, payment of judgment(s) or any combination thereof.

C.  Solely as respects the coverage afforded by this Endorsement, under the Common Provisions, **SECTION V – COMMON EXCLUSIONS, item 1. Aircraft, Auto, Rolling Stock or Watercraft** is deleted in its entirety and replaced by the following:

**1.  Aircraft, Auto, Rolling Stock Or Watercraft**

Based upon or arising out of the ownership, maintenance, use or entrustment to other of any aircraft, "auto", rolling stock, rail car, locomotive or watercraft owned or operated by or rented or loaned to, or in the control of, any insured. Use includes operation and "loading or unloading".

Notwithstanding the above, coverage is provided only for "autos" which have statutory auto liability coverage in place with a carrier rated "A- (VII) or higher by A.M. Best.

This exclusion applies even if:

a.  The "claim" against any insured alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of another by that insured, or if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto", rolling stock, rail car, locomotive or watercraft that is owned or operated by or rented or loaned to nay insured; or

[. . . .]

This exclusion does not apply to:

[…]

f.  "Claims" arising from "pollution conditions" caused by, arising out of or in any way related to the

operation, maintenance, use or "loading or
unloading" of "autos" by or on behalf on the Named
Insured.

ALL OTHER TERMS AND CONDITIONS OF THE
POLICY REMAIN UNCHANGED

EN0405-0515.

## V.    THE EXCESS POLICY

**A.    Identification of the Excess Policy**

5.1    CFSIC issued an Excess Policy to BCI, policy no. EFX-124407 (effective

12/31/23-12/31/24) (the "Excess Policy").

5.2    The Excess Policy includes a $3M Each Occurrence Limit of Liability and a $3M

Policy Aggregate Limit of Liability.

**B.    Provisions of the Excess Policy**

5.3    The Excess Policy includes the following Insuring Agreement:

### ENVIRONMENTAL EXCESS LIABILITY
### POLICY

Various provisions in this policy restrict coverage. Read the entire
policy carefully to determine rights, duties and what is and is not
covered.

Throughout this policy, the words "you" and "your" refer to the
Named Insured stated in Item **1.** Of the Declarations. The term
Insured means any person or organization qualifying as an insured
in the "controlling underlying insurance". The words "we", "us"
and "our" refer to the Company stated on the Declarations
providing this insurance. Other words and phrases that appear in
quotation marks have special meaning. Refer to **SECTION III
DEFINITIONS** and other provisions of this policy for such
meanings.

**I.    INSURING AGREEMENT**

We will pay on behalf of the Insured the "ultimate net loss":

COMPLAINT FOR DECLARATORY RELIEF – 17

**1.**     In excess of all "underlying insurance",

**2.**     Provided the injury or offense takes place during the Policy Period of this policy, and

**3.**     Only after all "underlying insurance" has been exhausted by the payments of the limits of such insurance for losses arising out of "occurrences", "pollution conditions" or "wrongful acts" insured by all of the policies designated in the Declarations as "underlying insurance".

If any "underlying insurance" does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then we shall not pay such loss.

We have no obligation under this insurance with respect to any claim or suit settled without our consent.

The amount we pay is limited as described in **SECTION IV. LIMIT OF LIABILITY.**

If we are prevented by law from paying on behalf of the Insured for coverage provided under this insurance, then we will indemnify the Insured.

The Agreements, Definitions, Terms, Conditions, and Exclusions of the "controlling underlying insurance" scheduled in Item **5**. of the Declarations, in effect at the inception date of this policy, apply to this coverage unless:

**1.**     They are inconsistent with provisions of this policy; or

**2.**     There are provisions in this policy for which a similar provision is not contained in the "controlling underlying insurance"; or

**3.**     They relate to premium, subrogation, any obligation to defend, the payment of expenses, Limits of Insurance, cancellation or any renewal agreement.

With respect to the exceptions described in **1**., **2**. or **3**. above, the provisions of this policy will apply.

**II.     DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS**

COMPLAINT FOR DECLARATORY RELIEF – 18

### A.   DEFENSE PROVISIONS

We shall not be called upon to assume charge of the investigation, settlement or defense of any claim made or suit brought against the Insured, but we shall have the right and be given the opportunity to be associated in the defense and trial of any claims or suits relative to any "occurrence", "pollution condition" or "wrongful act" which, in our opinion, may create liability on the part of us under the terms of this policy.

If we assume such right and opportunity, we shall not be obligated to defend any suit after the applicable limits of this policy have been exhausted by payment of the "ultimate net loss".

### B.   SUPPLEMENTAL PAYMENTS

The only supplemental payments and expense that we shall pay under this policy are as follows:

**1.**   All expenses incurred by us and solely at our discretion;

**2.**   All interest on that part of any judgment which accrues after entry of the judgment and before we have paid, offered to pay, or deposited into court that part of the judgment, payable under this policy, which does not exceed the Limits of Insurance, and to which this policy applies;

**3.**   If all "underlying insurance" pays pre-judgment interest, then we will pay related prejudgment interest awarded against the Insured on the part of the judgment we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

### C.   DEFENSE     AND     SUPPLEMENTAL PAYMENTS CONDITION

Defense provisions and supplemental payments are subject to all of the foregoing and:

COMPLAINT FOR DECLARATORY RELIEF – 19

**1.** If defense and/or supplemental payment expenses are included within the limit of insurance of any "underlying insurance", then any such expense payment we make shall reduce the Limits of Insurance of this policy.

**2.** If none of the policies of "underlying insurance" includes defense and/or supplemental payment expenses within the limit of insurance of the "underlying insurance", then any such expense payment we make shall not reduce the Limits of Insurance of this policy.

EN0028-0714.

5.4    The Excess Policy also includes the following relevant definitions:

### III.    DEFINITIONS

**A.** "Controlling underlying insurance" means the policy or policies of insurance as stated in Item **5.** of the Declarations.

**B.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**C.** "Pollution condition" means the discharge, dispersal, seepage, migration, release, escape, presence or movement of "pollutants". Two or more "pollution conditions" arising out of the same or related acts of discharge, dispersal, seepage, migration, release, escape or movement of "pollutants" shall be deemed to be a single "pollution condition".

**D.** "Ultimate net loss" means the amount of the principal sum, award or verdict actually paid or payable in cash in the settlement or satisfaction of claims for which the insured is liable, either by adjudication or compromise with the written consent of us, after making proper deduction for all recoveries and salvages.

Defense and supplemental expense payments shall be included within the "ultimate net loss", provided that such expense payments are included within the

agreements, terms, conditions, and limits of insurance of any "underlying insurance" in accordance with **SECTION 11.,** Paragraph **C. DEFENSE AND SUPPLEMENTAL PAYMENTS CONDITION.**

**E.**     "Underlying insurance" means the policy or policies of insurance as described in Item **5.** of the Declarations, including "controlling underlying insurance".

EN0028-0714.

5.5     The Excess Policy includes the following Pollution exclusion:

**V.     EXCLUSIONS**

This insurance does not apply to:

[…]

**B.     POLLUTION**

**1.**     Any liability arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**2.**     Any loss, cost or expense arising out of any:

**a.**     Request, demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or

**b.**     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effect of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid alkalis, chemicals and

COMPLAINT FOR DECLARATORY RELIEF – 21

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

> waste. Waste includes material to be recycled, reconditioned or reclaimed.

EN0028-0714.

5.6     The Excess Policy includes the following exclusion regarding Controlling Underlying Insurance:

> ### V.     EXCLUSIONS
>
> This insurance does not apply to:
>
> […]
>
> ### C.     CONTROLLING UNDERLYING INSURANCE
>
> Any liability excluded by "controlling underlying insurance".

EN0028-0714.

### VI.    NO INDEMNITY OR DEFENSE COVERAGE UNDER THE POLICIES

6.1     CFSIC reasserts Paragraphs 1.1 through 5.6 and incorporates the same as though fully stated herein.

6.2     The Commercial General Liability policy (CGL) contained in the Primary Policy provides coverage only for "bodily injury" caused by an "occurrence," as those terms are defined by the Policy, provided that any such "bodily injury" occurs during the policy period.

6.3     There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "bodily injury" as that term is defined.

6.4     There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "bodily injury" as that term is defined.

6.5     There is an actual and justiciable controversy as to whether the claims alleged against BCI involve an "occurrence" as that term is defined.

COMPLAINT FOR DECLARATORY RELIEF – 22

6.6    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette involve an "occurrence" as that term is defined.

6.7    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "bodily injury" caused by an "occurrence."

6.8    There is an actual and justiciable controversy as to whether claims alleged against Mr. Wellette are for "bodily injury" caused by an "occurrence."

6.9    Pursuant to the CGL policy contained in the Primary Policy, CFSIC has a duty to defend its insureds against "suits", as that term is defined by the Policy, seeking damages to which this insurance applies.

6.10    There is an actual and justiciable controversy as to whether there is a "suit" seeking damages to which the CGL policy applies, asserted against BCI.

6.11    There is an actual and justiciable controversy as to whether there is a "suit" seeking damages to which the CGL policy applies, asserted against Mr. Wellette.

6.12    Pursuant to the CGL policy contained in the Primary Policy, coverage is excluded for "damages" or "cleanup costs" arising out of the use of an "auto," as that term is defined, operated by an insured.

6.13    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "damages" arising out of the use of an "auto."

6.14    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "damages" arising out of the use of an "auto."

6.15    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "cleanup costs" arising out of the use of an "auto."

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

6.16    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "cleanup costs" arising out of the use of an "auto."

6.17    The Contractors Pollution Liability policy (CPL) contained in the Primary Policy provides coverage only for "damages" for "bodily injury" or "property damage", and for "cleanup costs" resulting from a "pollution condition", and caused by an "occurrence" as those terms are defined.

6.18    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "damages" for "bodily injury" resulting from a "pollution condition."

6.19    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "damages" for "bodily injury" resulting from a "pollution condition."

6.20    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "damages" for "cleanup costs" resulting from a "pollution condition."

6.21    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "damages" for "cleanup costs" resulting from a "pollution condition."

6.22    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "damages" for "bodily injury" resulting from a "pollution condition" caused by an "occurrence".

6.23    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "damages" for "bodily injury" resulting from a "pollution condition" caused by an "occurrence".

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

6.24    Pursuant to the CPL policy contained in the Primary Policy, CFSIC has a duty to defend its insureds against "suits", as that term is defined by the Policy, seeking damages to which this insurance applies.

6.25    There is an actual and justiciable controversy as to whether there is a "suit" seeking damages to which the CPL policy applies, asserted against BCI.

6.26    There is an actual and justiciable controversy as to whether there is a "suit" seeking damages to which the CPL policy applies, asserted against Mr. Wellette.

6.27    Pursuant to the "Aircraft, Auto, Rolling Stock Or Watercraft" exclusion, as modified by the Transportation Pollution Liability Blanket, coverage is excluded for "damages" or "cleanup costs" arising out of the use of an auto operated by an insured. The exclusion does not apply to, "claims" arising from a "pollution condition" arising out of the use of an auto by the named insured.

6.28    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "damages" arising out of the use of an auto operated by an insured.

6.29    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "damages" arising out of the use of an auto operated by an insured.

6.30    There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "cleanup costs" arising out of the use of an auto operated by an insured.

6.31    There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "cleanup costs" arising out of the use of an auto operated by an insured.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

6.32     There is an actual and justiciable controversy as to whether the claims alleged against BCI are for "claims" arising from a "pollution condition," as those terms are defined, arising out of the use of an auto by the named insured.

6.33     There is an actual and justiciable controversy as to whether the claims alleged against Mr. Wellette are for "claims" arising from a "pollution condition," as those terms are defined, arising out of the use of an auto by the named insured.

6.34     Pursuant to the Excess Policy, coverage is provided for the "ultimate net loss" in excess of all "underlying insurance", as those terms are defined by the Excess Policy.

6.35     Pursuant to the Excess Policy, coverage under the Excess Policy will apply only after all "underlying insurance" has been exhausted by payments of the limits of such insurance for losses arising out of "occurrences" or "pollution conditions."

6.36     There is an actual and justiciable controversy as to whether the claims asserted against BCI are covered by the "underlying insurance."

6.37     There is an actual and justiciable controversy as to whether the claims asserted against Mr. Wellette are covered by the "underlying insurance."

6.38     Pursuant to the Excess Policy, coverage is excluded for any liability arising directly or indirectly out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time. Coverage is further excluded for any loss, cost, or expense arising out of any request demand or order that you or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of pollutants and any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

neutralizing, or in any way responding to or assessing the effect of pollutants. "Pollutants" is defined to include any solid or liquid contaminant.

6.39 There is an actual and justiciable controversy as to whether the claims asserted against BCI arise directly or indirectly out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time.

6.40    There is an actual and justiciable controversy as to whether the claims asserted against Mr. Wellette arise directly or indirectly out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants at any time.

6.41    Pursuant to the Excess Policy, the Excess Policy does not apply to any liability excluded by "controlling underlying insurance."

6.42    There is an actual and justiciable controversy as to whether the claims asserted against BCI are covered by the "underlying insurance."

6.43    There is an actual and justiciable controversy as to whether the claims asserted against Mr. Wellette are covered by the "underlying insurance."

6.44    CFSIC reserves the right to assert any other exclusions or grounds for which coverage for the claims against BCI and/or Mr. Wellette may be excluded under the CFSIC Policies.

## VII.    CAUSE OF ACTION FOR DECLARATORY RELIEF

7.1    CFSIC reasserts Paragraphs 1.1 through 6.44 and incorporates the same as though fully set forth herein.

7.2    Actual and justiciable controversies exist as to whether any defense coverage is available to BCI under the Policies as set forth above.

7.3    Actual and justiciable controversies exist as to whether any defense coverage is

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

available to Mr. Wellette under the Policies as set forth above.

7.4    Pursuant to and in accordance with 28 U.S.C. § 2201, CFSIC requests that the Court grant Declaratory Relief in favor of CFSIC and enter a judicial determination that CFSIC does not have an obligation to provide a defense to BCI for the claims asserted against it.

7.5    Pursuant to and in accordance with 28 U.S.C. § 2201, CFSIC requests that the Court grant Declaratory Relief in favor of CFSIC and enter a judicial determination that CFSIC does not have an obligation to provide a defense to Mr. Wellette for the claims asserted against him.

7.6    Actual and justiciable controversies exist as to whether any indemnity coverage is available to BCI under the Policies in regard to the claims related to the claims asserted against it.

7.7    Actual and justiciable controversies exist as to whether any indemnity coverage is available to Mr. Wellette under the Policies in regard to the claims related to the claims asserted against him.

7.8    Pursuant to and in accordance with 28 U.S.C. § 2201, CFSIC requests that the Court grant Declaratory Relief in favor CFSIC and enter a judicial determination that CFSIC does not have an obligation to provide any indemnity coverage to BCI regarding the claims asserted against it.

7.9    Pursuant to and in accordance with 28 U.S.C. § 2201, CFSIC requests that the Court grant Declaratory Relief in favor CFSIC and enter a judicial determination that CFSIC does not have an obligation to provide any indemnity coverage to Mr. Wellette regarding the claims asserted against him.

## VIII.   PRAYER FOR RELIEF

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

WHEREFORE, Crum & Forster Specialty Insurance Company, having specifically alleged the foregoing, now prays for the following relief:

8.1    For a declaration of the rights and obligations of the Parties hereto under the Policies.

8.2    For a declaration that there is no duty to defend BCI under the Primary Policy.

8.3    For a declaration that there is no duty to defend Mr. Wellette under the Primary Policy.

8.4    For a declaration that there is no duty to indemnify BCI under the Primary Policy.

8.5    For a declaration that there is no duty to indemnify Mr. Wellette under the Primary Policy.

8.6    For a declaration that the Excess Policy does not provide coverage in excess of the CPL and CGL coverage parts contained in the Primary Policy for the claims asserted against BCI.

8.7    For a declaration that the Excess Policy does not provide coverage in excess of the CPL and CGL coverage parts contained in the Primary Policy for the claims asserted against Mr. Wellette.

8.8    For a judicial declaration that BCI, Mr. Wellette, the Estate of Kurt Allen Hellmich, Sierra Evers-Hellmich, and Lynn Evers are bound by any judicial declarations in this matter involving the Policies.

8.9    For all pre-judgment and post-judgment interest as allowed by applicable law.

8.10    For attorney fees and costs allowed by applicable statute and law.

8.11    For other and further relief as the Court deems just and equitable.

LETHER LAW GROUP

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

*/s/ Thomas Lether*
Thomas Lether, OSB #101708
*/s/ Eric J. Neal*
Eric J. Neal, OSB #110268
1848 Westlake Ave N., Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for Plaintiff Crum & Forster*
*Specialty Insurance Company*

COMPLAINT FOR DECLARATORY RELIEF – 30